[Sac. No. 747. Department One. — June 26, 1901.]

WILLIAM R. REESE et al., Respondents, v. BALD MOUNTAIN CONSOLIDATED GOLD MINING COMPANY, a Corporation, and A. PUGH, Defendants. The Defendant Corporation, Appellant.

MINER'S LIEN — WORK DONE FOR AGENT — INSUFFICIENT FINDING OF AGENCY. — In an action to enforce a miner's lien, under section 1183 of the Code of Civil Procedure, for work done in a mine at the instance of an alleged agent of the owner, it is necessary for the plaintiff to allege and prove that the labor was performed at the instance of one who was such agent, within the definition of that term as used in such section; and a finding that the person at whose instance the work was done was in possession of the premises under a contract with the owner, by which he was authorized to occupy and hold possession, and to make improvements and prosecute development-work and prospecting thereon, is not a finding that such person was an agent, within the meaning of that section, nor that he was a contractor, sub-contractor, architect, or builder, nor a person having charge of any mining, or the construction, alteration, addition to, or repair of any building or other improvement.

ID. — KNOWLEDGE BY OWNER OF WORK. — In such an action, where the complaint contains no allegation that any building or other improvement was constructed upon the mining-ground with the knowledge of the owner, a finding that at the time the work was being performed, the owner had full knowledge and notice of the contract between the claimant and his employer, and of all work done thereunder, is outside of the issues, and cannot support a judgment establishing a lien, under section 1192 of the Code of Civil Procedure.

ID. — WORK DONE IN MINE — NOTICE OF NON-RESPONSIBILITY. — Section
1192 of the Code of Civil Procedure, providing that every building or
improvement constructed *upon* lands with the knowledge of the
owner, shall be deemed to have been constructed at his instance,
and that the interest of the owner shall be subject to a miner's
lien, unless the owner gives notice of his non-responsibility, does
not apply to labor done by a miner in a mine.

ID. — WORK DONE UNDER BOND — KNOWLEDGE OF TERMS BY LABORER.
— A miner, employed to work in a mine, by a person who had a
working bond thereon, with a privilege of purchase, by the terms
of which his employer was to do the work at his own cost and ex-
pense, and keep the property free from all liens, is not entitled to
a lien on the mining property, if he had knowledge of the terms of
such working bond; and in an action to enforce a lien for such
work, in which the owner sets up such knowledge by the claimant,
the exclusion of evidence thereof is error.

APPEAL from a judgment of the Superior Court of Plumas
County.  Stanley A. Smith, Judge.

The facts are stated in the opinion.

L. N. Peter, for Defendant Corporation, Appellant.

Goodwin & Webb, for Respondents.

COOPER, C. — This action was brought to recover an
amount claimed as wages for labor performed in mines in the
lands of appellant corporation, and to have the said amount
declared to be a lien upon the mining lands described in the
complaint.  Findings were filed, and judgment ordered for
plaintiffs.  This appeal is from the judgment, upon the judg-
ment roll and a bill of exceptions.  The complaint alleges
that the labor performed was that of miners in and upon the
mines of the corporation, and that the contracts for said labor
were made with defendant Pugh.  There is no dispute as to
the facts, that the labor was performed, that the contracts were
made with Pugh, that the labor was that of mining in the
lands described in the complaint, and that the corporation is
the owner, in fee, of such mines.

It is provided in section 1183 of the Code of Civil Procedure
that "any person who performs labor in any mining claim or
claims has a lien upon the same, and the works owned and
used by the owners for reducing the ores from such mining
claim or claims, for the work or labor done, or materials fur-
nished by each respectively, whether done or furnished at the

instance of the owner of the building or other improvement, or his agent; and every contractor, sub-contractor, architect, builder, or other person having charge of any mining, or of the construction, alteration, addition to, or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner, for the purposes of this chapter."

It was essential, under the provisions of the above-quoted section, for plaintiffs to allege and prove that the labor was performed at the instance of the agent of appellant, within the definitions therein as to who shall be held to be such agent.

Upon this theory the complaint alleges that during all said time defendant Pugh was the superintendent and managing agent of said corporation, in and about its mines. The answer denied the allegation. There is no finding upon said issue. The only finding is the following: "That at said time defendant A. Pugh was in the possession of said premises described in the complaint, under a contract theretofore entered into between said A. Pugh and the other defendant, The Bald Mountain Consolidated Gold Mining Company, under which contract said A. Pugh was authorized and empowered to occupy and hold possession of said premises, and make extensive improvements and prosecute development-work and prospecting thereon and therein."

This is not a finding that Pugh was the agent of appellant. Neither is it a finding that he was a contractor, sub-contractor, architect, or builder, nor that he was a person having charge of any mining, or the construction, alteration, addition to, or repair of any building or other improvement.

It is simply a finding that Pugh was in possession of the premises under a contract made with appellant, and that the contract authorized Pugh to occupy and hold possession, and to make improvement and prosecute development-work and prospecting therein. The fact that the contract authorized Pugh to make improvements and to do certain work does not show that Pugh was in any manner the agent of appellant.

The contract, for aught that appears in the finding, may have been a conveyance of a life estate to Pugh. It authorized Pugh to improve and develop the premises on his own account and for himself.

The agent referred to in the section must be the agent of the *owner of the building, mining, or improvement.* And when the

statute says that certain persons are "deemed to be the agent of the owner," it means the agent of the owner of the building, mining, or other improvement. The failure to find upon this material issue was error. (*Soto* v. *Irvine*, 60 Cal. 436; *Malone* v. *Bosch*, 104 Cal. 681; *Spect* v. *Spect*, 88 Cal. 439.[1])

The above objection is attempted to be obviated by the fact that the court elsewhere found "that at the time said contract between said A. Pugh and said David R. Reese was made, and during the times said work and labor was being performed thereunder, the said defendant The Bald Mountain Consolidated Gold Mining Company, a corporation, had full notice and knowledge of the said contract, and of all work being done by the said plaintiff David R. Reese thereunder."

This finding is entirely outside any issue made by the pleadings.

The complaint contains no allegation that any building or other improvement was constructed upon the lands of appellant, with its knowledge. A finding outside the issues must be disregarded.

That the finding is outside the issues is readily perceived. The complaint alleges a contract made with appellant, through its agent, Pugh. The finding quoted is applicable to a case in which there was no contract with the owner in any manner whatever, but in which the owner is held liable, as a penalty for not giving notice that he would not be responsible.

The statute relied upon, to which it is claimed the above finding may be applied, is section 1192 of the Code of Civil Procedure, which provides: "Every building or other improvement mentioned in section 1183 of this code, constructed upon any lands with the knowledge of the owner, . . . shall be held to have been constructed at the instance of such owner, . . . and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner . . . shall, within three days after he shall have obtained knowledge of the construction, alteration, or repair, . . . give notice that he will not be responsible for the same."

The section mentions every *building* or *improvement* constructed *upon* lands with the knowledge of the owner, and expressly provides for a case where notice is not given within three days after the owner shall have obtained knowledge of

---

[1] 22 Am. St. Rep. 314.

the *construction, alteration,* or *repair,* by posting a notice in some conspicuous place upon the *land, building,* or *improvement.* The section cannot be held applicable to a claim by a miner for labor in a mine. Labor in a mine is not a building or improvement constructed upon lands. The finding is, that appellant had full notice of the contract, and of all work being done thereunder. Even if the complaint were sufficient, the finding does not show that any building or improvement was constructed upon the lands of appellant with its knowledge. We think the views herein expressed are supported by the cases of *Williams* v. *Santa Clara Mining Association,* 66 Cal. 200, and *Jurgenson* v. *Diller,* 114 Cal. 492.[1]

In the latter case it was held that labor performed in "drifting in a tunnel" is not the construction, alteration, or repair of a building or other improvement, under section 1192 of the Code of Civil Procedure; that the doctrine of notice does not apply when the work consists of a subtractive process, — the removal of the very *corpus* of the property. It was said: "As well require one who sees a trespasser cutting his timber to post notice of his non-liability, under penalty of having his land subjected to a lien for the labor."

In this case, apparently for the purpose of obviating the rule in the cases cited, the court found that the labor performed was "for the development, improvement, protection, and preservation of the said premises." This may be regarded as a conclusion, and obviously so, for the complaint alleges that the work was done by plaintiffs as miners in and upon the mines of appellant, and the court elsewhere finds that the work of plaintiffs on the premises was in the capacity of miners.

In view of the failure of the court to find that Pugh was the agent of appellant, we cannot indulge in presumptions as to such agency. The court found that the plaintiffs commenced work on and in the premises, pursuant to the contract entered into between them and Pugh, and that Pugh was in possession under a contract with appellant, which authorized Pugh to hold possession and make improvements and prosecute development-work. There is no finding as to whether or not the plaintiffs had knowledge of the terms of the contract between appellant and Pugh. This contract provided that Pugh

[1] 55 Am. St. Rep. 83.
CXXXIII. Cal. — 19

was to do the work at his own cost and expense, and that he was to keep said property free from all liens. If plaintiffs knew of this contract, and that Pugh did not assume to act on appellant's behalf, they cannot charge a lien upon the property. (*Jurgenson* v. *Diller*, 114 Cal. 492.[1])

A party desiring to hold and enforce a lien upon the property of one who did not employ him must bring his case clearly within the terms of the statute. The lien is a creation of the statute, and the statute creating it must be looked to, both for the right to such lien and the mode by which it may be enforced. (*Spinney* v. *Griffith*, 98 Cal. 151.)

The appellant, in its answer, alleged that plaintiffs well knew the *status* of Pugh and his interest under the contract, and that with such knowledge they worked for Pugh as principal, and looked to him for their wages. This, if true, was a valid defense, and raised a material issue. (*Jurgenson* v. *Diller*, 114 Cal. 492;[1] *Ayers* v. *Green Gold M. Co.*, 116 Cal. 335.) The court failed to find upon the issue so raised.

The deposition of plaintiff David R. Reese was read in evidence. He testified in his direct examination as to the fact that plaintiffs performed labor in appellant's mine, as miners, at the agreed price of three dollars per day, under a contract made with Pugh, and that no notice was posted by appellant that it would not be responsible for such labor, until in February, 1895.

The appellant, in cross-examination, asked many questions, with the evident purpose of showing that plaintiffs knew of the contract between Pugh and appellant, and its terms, and that they were working with the express understanding that they were to look to Pugh alone for their wages. Among the questions so asked are the following: —

"Q. By whom were you and William R. Reese employed from February 27, 1895, to the time you quit work, and at whose request did you and William R. Reese continue to work on said premises after your lien was filed?"

"Q. At the time you and William R. Reese commenced work on the premises described in the complaint, did not you and William R. Reese both know that Simcoe Chapman and others had a working bond, or bond allowing them to prospect the said premises, with a view of purchasing the same, and

---

[1] 55 Am. St. Rep. 83.

that they alone were responsible for the wages of all laborers employed by A. Pugh?"

"Q. When did you and William R. Reese first become acquainted with the fact that the premises described in the complaint were owned by the defendant corporation?"

"Q. Were you not entirely familiar with the fact that the premises described in the complaint were owned by others than those who employed you, before or at the time William R. Reese commenced work there, and did you not at that time impart the information by you possessed to William R. Reese?"

"Q. Had either you or William R. Reese been employed by A. Pugh before you were by him employed to do the labor mentioned in your complaint?"

The plaintiffs objected to each of the above questions, and the objections were sustained. In sustaining the objections the court erred. Their object was for the purpose of showing that plaintiffs were employed by Pugh on his own account, and not in any manner as the agent of appellant. The evidence sought to be elicited was competent, and went to the very gist of appellant's defense.

We can conceive no theory upon which the objections were sustained. If evidence on behalf of plaintiffs was competent to prove the contract under which they claimed a lien, surely all evidence tending to disprove the contract, and to prove a different one, was competent in cross-examination. It is not necessary to discuss other alleged errors.

We advise that the judgment be reversed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed.        Garoutte, J., Van Dyke, J., McFarland, J.