JAY S. MILNER, GEORGE E. AIRIS, AND GEORGE H. DERN, AS TRUSTEES FOR AND ON BEHALF OF THE STOCKHOLDERS AND CREDITORS OF THE DEXTER-TUSCARORA CONSOLIDATED GOLD MINES COMPANY, APPELLANTS, *v.* GEORGE R. SHUEY, RESPONDENT, DEXTER-TUSCARORA MINES COMPANY, A CORPORATION, AND L. W. HAGG, JOHN DOE, RICHARD ROE, FIRST DOE, SECOND DOE, AND THIRD DOE, COPARTNERS, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF INDEPENDENCE GOLD SYNDICATE, DEFENDANTS.

No. 3145

September 3, 1936.                    60 P. (2d) 604.

*McNamara & Robbins* and *Senior & Senior,* for Appellants:

*H. U. Castle* and *D. A. Castle,* for Respondent:

164

# OPINION

By the Court, DUCKER, C. J.:

Action for foreclosure of a mechanic's lien for labor performed upon and materials furnished by respondent, for the mining property described in his complaint.

Foreclosure was decreed in the sum of $1,789.50, the amount claimed.

Prior to the trial respondent was, by order of the court, permitted to file an amended claim of lien substituting Dexter-Tuscarora Consolidated Gold Mines Company as the owner of the property, for the two mining companies named in the original claim of lien. Shortly thereafter, Jay S. Milner, George E. Airis, and George H. Dern, as trustees for and on behalf of the stockholders and creditors of the Dexter-Tuscarora Consolidated Gold Mines Company, filed their complaint of intervention. The case was tried upon the issues made upon the pleadings of respondent and interveners and upon an agreed statement of facts. It comes here on appeal from an order denying a motion for a new trial.

It is alleged in the complaint in intervention that the Dexter-Tuscarora Consolidated Gold Mines Company, organized under the laws of the State of Utah and qualified under the laws of the State of Nevada to transact business therein as a foreign corporation, forfeited its charter on or about April 6, 1916, and ceased thereafter to exist as a corporation; that interveners were the directors of said corporation when its charter was forfeited and are the only surviving directors; that by operation of law they became vested with all the property and assets of said corporation and charged with the duty of protecting said property and assets and winding up its corporate affairs.

It is also alleged in the complaint in intervention

that in September 1931, interveners, as such trustees and for the purpose of endeavoring to dispose of its mining property described in the complaint, and for the purpose of winding up the affairs of said corporation, granted to one Lawrence W. Hagg, of Toronto, Canada, a two-year option in writing to purchase said mining property with the right, during the term of said option, to operate said property for the purpose of determining its value, and as consideration for said option and the right to operate said property, to pay a certain royalty upon any mineral extracted therefrom. The performance of labor and furnishing materials, as alleged in the complaint, are denied in intervener's pleading, and they allege that on or about the 30th day of November 1931, they caused two nonliability notices to be posted upon said mining property, and that each was posted in a conspicuous place upon a building and improvement situate thereon.

Appellants contend that respondent's lien is insufficient because (1) it does not contain "the name of the person by whom he was employed or to whom he furnished the material," and (2) "Nor a statement of the terms, time given, and conditions of his contract," as required by section 3739 N. C. L. 1929.

In these respects the lien and amended lien shown by the agreed statement of facts, read:

"That between October 1, 1932, and November 17, 1932, both dates inclusive, at the special instance and request of the said L. W. Hagg, John Doe, Richard Roe, First Doe, Second Doe and Third Doe, doing business under the firm name and style of Independence Gold Syndicate, the said George R. Shuey performed work and labor upon, and furnished and supplied materials for, about, in and upon, said lode mining claims, and in the development thereof, which said work, labor and materials furnished and supplied, is and was of the reasonable value of $2,085.50, and that the said L. W. Hagg, John Doe, Richard Roe, First Doe, Second Doe and Third Doe, doing business under the firm name of

Independence Gold Syndicate, promised and agreed to pay said George R. Shuey the said sum of $2,085.50 for said work, labor and materials furnished and supplied as aforesaid, on or about December 1, 1932.

"That no part of the said $2,085.50 has been paid, save and except the sum of $800, and there is now due and owing * * * the sum of $1,285.50."

■■ It appears from the agreed statement of facts that respondent was employed by L. W. Hagg, instead of a copartnership of which he was a member, as stated in the claim of lien. But this is not a substantial variance, and a lien will not fail for lack of conformity to requirements made essential by statute, unless the proof shows a substantial variance. Malter v. Falcon M. Co., 18 Nev. 209, 2 P. 50; section 3739 N. C. L. 1929. This section provides, in part: "Upon the trial of any action or suit to foreclose such lien no variance between the lien and the proof shall defeat the lien or be deemed material unless the same shall result from fraud or be made intentionally, or shall have misled the adverse party to his prejudice, but in all cases of immaterial variance the claim of lien may be amended, by amendment duly recorded, to conform to the proof."

How interveners could have been misled to their prejudice by a statement of Hagg's status as a copartner instead of an individual, is not apparent. That they were not so misled is admitted in their complaint wherein it is alleged that "plaintiff performed any services which were performed by him and furnished any materials which were furnished by him at the sole instance and request of Lawrence W. Hagg." Appellants say that the provision quoted above will not avail respondent because he did not amend his lien in that respect. That part of the provision is directory merely.

■ The claim that the lien is fatally defective in not containing "a statement of the terms, time given and conditions of his contract," is without merit. The evidence, which is without dispute in this respect, shows an express contract, the terms and conditions of which

are substantially stated in the lien and amended lien. They are as explicit in statutory requirements as the one approved by this court in Riverside F. Co. v. Quigley, 35 Nev. 17–29, 126 P. 545.

They reveal no special terms, time, or conditions, but the evidence shows that none existed. It was unnecessary to negative their existence, as was done in the lien under consideration in the case just cited. Lonkey v. Wells, 16 Nev. 271.

The Porteous Decorative Co. v. Fee, 29 Nev. 375, 91 P. 135, much stressed by appellants, is not an authority against the sufficiency of the lien before us. The lien under consideration in that case did not substantially comply with the statute.

■ Appellants next attack the complaint upon the ground that it does not state facts sufficient to constitute a cause of action for the foreclosure of a mechanic's lien. The point most strongly insisted upon is that the complaint is utterly deficient in failing to allege that the work was done and the materials furnished at the instance of the owner of the mine or his agent, or that the interveners had knowledge of the performance or intended performance of the work for which the lien is claimed. Sections 3735 and 3743 N. C. L. are invoked in support of this contention. The latter section reads: "Every building or other improvement mentioned in section 1 of this act, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some

conspicuous place upon said land, or upon the building or other improvement situate thereon, and also shall, within five days after such posting, file a duplicate original of such posted notice with the recorder of the county where said land or building is situated, together with an affidavit attached thereto showing such posting of the original notice. Such filing shall be prima-facie evidence of said posting."

The complaint does not allege such knowledge on the part of the interveners. It may be conceded that under the statute knowledge on the part of an owner 'or the person having or claiming an interest in the property, of the improvements constructed thereon, is an essential allegation in a complaint which seeks to charge the property with a lien for labor performed or materials furnished. 3 Bancroft's Code Pleadings, p. 3110; Tonopah L. Co. v. Nevada A. Co., 30 Nev. 445, 97 P. 636.

We think, however, that the complaint in intervention supplies this defect sufficiently to support the judgment, and such knowledge is amply proved by the agreed statement of facts. In this respect the latter reads:

"That on September 9, 1931, the said George H. Dern, Jay S. Milner, George E. Airis and A. C. Milner * * * as the only surviving Directors and Trustees for and on behalf of the stockholders and creditors of the said Dexter-Tuscarora Consolidated Mines Company, a corporation, granted to one Lawrence W. Hagg, also known as L. W. Hagg, of Toronto, Canada, a lease and option for the purpose of endeavoring to dispose of the mining property described in plaintiff's complaint, and other property in that locality, and for the further purpose of winding up the affairs of said corporation, with the right during the term of said option to operate said property and for the purpose of developing the same and determining its value, and as a consideration for said option and the right to operate said property, the said Lawrence W. Hagg agreed to conduct certain work upon said property and to pay a certain royalty upon any mineral extracted therefrom.

"A copy of said lease and option is hereto attached and made a part of this stipulation as if herein fully set forth."

■■ The pleading in a mechanics' lien case should be liberally construed, Lamb v. Lucky Boy Min. Co., 37 Nev. 9–16, 138 P. 902, and it is well settled that an answer may supply material omissions in a complaint. Hawthorne et al. v. Smith, 3 Nev. 182, 93 Am. Dec. 397; Riverside Fixture Co. v. Quigley, 35 Nev. 17, 126 P. 545; Thomas v. Palmer, 49 Nev. 438, 248 P. 887. Riverside Fixture Co. v. Quigley, supra, was a mechanics' lien case. The complaint did not properly describe the premises. The answer did, and it was agreed to by stipulation of the parties. This was held to aid the complaint so as to support the judgment.

■ So, in this case, the allegations in appellants' complaint in intervention, showing their granting to Hagg a two-year option on the mining property of their defunct corporation with the right during the term of the option to operate the property with the obligation to pay them a certain royalty upon any mineral extracted therefrom, constituted notice to them of the improvements contemplated by Hagg to effectuate the purpose of the option. In Gould v. Wise, 18 Nev. 253–259, 3 P. 30, 31, the consideration of the lease was that the lessee " 'at his own cost and expense * * * make all necessary repairs and improvements in and about said mill and reduction works, and furnish all necessary materials to place the same in good condition for crushing,' etc." The money so used, together with that expended in paying taxes and insurance, the lease provides, "shall be in full payment and satisfaction for the rent of said premises for the first year." The court said: "This of itself shows knowledge on the part of the corporation of the 'intended construction, alteration, or repair,' within the meaning of section 9."

It was held that to have avoided liability it was the duty of the lessor to comply with the statute and post notices to the effect that they would not be liable for

material furnished or labor performed. This holding was approved in Lamb v. Lucky Boy Min. Co., supra.

■ We now pass to appellant's contention that the posting of the two nonliability notices on the claims absolved them from liability. We decide this question adversely to them. It appears from the agreed statement of facts that on or about November 30, 1931, interveners caused two notices, called nonliability notices, to be posted in conspicuous places on the mining claims in question, and thereafter, to wit, on December 20, 1932, filed a copy of the same together with a copy of the affidavit of the party placing the notices, in the office of the county recorder of the county of Elko, Nevada.

Even if the posting was duly performed, there was not a sufficient compliance with said section 3743. In addition to posting, the section provides: "And also shall, within five days after such posting, file a duplicate original of such posted notice with the recorder of the county where said land or building is situated, together with an affidavit attached thereto showing such posting of the original notice."

The filing of the duplicate original more than a year after the posting was ineffectual by reason of the above provision. It was equivalent to no filing at all. The question is governed by our ruling in George et al. v. Wentworth, 56 Nev. 380, 53 P. (2d) 1193, wherein we held that this provision was intended to impose an additional requirement upon an owner in order to exempt his property from the effect of a lien claim. But appellants contend that this case is not ruling in this instance because it did not appear there, as here, that the lien claimant had actual knowledge of the nonliability claim of the owners of the property. Actual knowledge will not dispense with the positive requirement of the statute. Appellants cite the cases of Phillips v. Snowden Placer Co., 40 Nev. 66, 160 P. 786, and Didier v. Webster Mines Corporation, 49 Nev. 5, 234 P. 520, in which it was held that the purpose of the statute was to give actual notice to workmen or materialmen that the owner

of the property disclaims responsibility for liens upon it for their services or supplies. That is true. Requiring the posting to be in a conspicuous place evidences that. But it was also intended to take each case out of the realms of uncertainty which could arise from conflicting or unsatisfactory evidence as to the fact of such knowledge.

As was stated in Rosina v. Trowbridge, 20 Nev. 105, 17 P. 751, 759: "The legislature has seen fit to limit persons owning or claiming any interest in property mentioned in section 9, to one method of giving notice if they wish to escape the effect of liens. We cannot supply others. This question has been decided in many cases, and, as far as we know, against the views of counsel for defendant." Pasqualetti v. Hilson, 43 Cal. App. 718, 185 P. 693, cited in George et al. v. Wentworth, supra, held to the same effect.

It is contended that the complaint furnishes no basis for the lien and judgment for the additional sum of $504, as a penalty. The complaint alleges: "That there is now due and owing from the defendants to this plaintiff the sum of $504.00 for twenty-eight working days, in addition to the said sum of $1,285.50 as aforesaid, as a penalty pursuant to, and in accordance with the provisions of * * * Chapter 139, p. 226, Statutes of Nevada, 1925, no part of which has been paid." This constitutes a clear statement of intention to exact the penalty prescribed by the statute, section 2785 N. C. L., and is sufficient. Bowers v. Charleston Hill Nat. Mines, 50 Nev. 99–112, 251 P. 721, 256 P. 1058. The agreed statement of facts supports the finding.

In the complaint the sum of $500 is alleged as the reasonable value of services of plaintiff's attorneys, and the court, in its judgment, allowed that amount. Appellant claims that it is excessive. The agreed statement of facts contains the following stipulation: "The amount of attorneys' fees, if any are allowed in this action, shall be fixed by the court in a sum deemed reasonable."

What is a reasonable attorney fee must, in a

large measure, depend upon the facts of the particular case. Among the facts that must be taken into account are the amount involved, the character of the services rendered, and the time employed. Quint & Hardy v. Ophir Silver Mining Company, 4 Nev. 304, 305. The amount involved in this case was the sum of $1,789.50. Considering that in connection with the other phases of the litigation, including the fact that no time or labor was spent in the examination of witnesses in court (the case having been tried on an agreed statement of facts), we think the fee of $500 allowed by the court is excessive. This part of the judgment is therefore modified to allow the sum of $350 as attorneys' fee instead of the sum of $500 fixed by the court.

Neither party shall recover costs on the appeal. The judgment, as hereby modified, and the order denying a motion for a new trial, should be affirmed.

It is so ordered.

### ON PETITION FOR REHEARING

February 6, 1937.

*Per Curiam:*

It is ordered that a rehearing be granted in this case limited to a consideration of the following questions: (1) Does the plaintiff's complaint state a cause of action against interveners for a personal judgment? (2) Can the judgment for a penalty under section 2785 N. C. L. be sustained?

### ON REHEARING

July 2, 1937.                                           69 P. (2d) 771.

*McNamara & Robbins* and *Senior & Senior,* for Appellants:

*H. U. Castle* and *D. A. Castle,* for Respondent:

## OPINION

By the Court, DUCKER, C. J.:

A rehearing was granted in this case limited to a consideration of the following questions: (1) Does the plaintiff's complaint state a cause of action against interveners for a personal judgment? (2) Can the judgment for a penalty under section 2785 N. C. L. be sustained?

We have concluded that both questions must be answered in the negative. We will continue to designate appellants as interveners.

As will be seen by referring to our original opinion, Milner et al. v. Shuey, 57 Nev. 159, 60 P. (2d) 604, this action is for the foreclosure of a mechanic's lien for labor performed and materials furnished by the respondent, George Shuey, and penalty pursuant to statute. So far as pertinent to the questions stated, the complaint alleged that between certain dates in 1932 in Elko County, Nevada, at the special instance and request of defendants Dexter-Tuscarora Mines Company, a corporation, and L. W. Hagg and several others doing business under the firm name and style of Independence Gold Syndicate, and for their use and benefit, the said plaintiff performed work and labor, and sold, furnished, and delivered materials and supplies for defendants, about, in, and upon those certain lode mining claims in the county of Elko, State of Nevada (describing them). That there is due and owning from defendants to this plaintiff the sum of $504 for 28 working days, in addition to the said sum of $1,285.50, as a penalty pursuant to, and in accordance with the provisions of chapter 71, page 121, Statutes of Nevada 1919, as amended by chapter 129, page 226, Statutes of

Nevada 1925 (N. C. L. sec. 2785), no part of which has been paid.

■ That at the time the said work and labor were performed, and caused to be performed, and the said materials and supplies were furnished and delivered, in and upon said lode mining claims, said defendants were the owners and reputed owners of said real property, consisting of the said lode mining claims. The perfecting of a lien is alleged. In addition to the sums claimed being adjudged a lien against the property, execution for any deficiency was prayed for. As stated in the original opinion, the respondent was permitted to file an amended claim for lien substituting Dexter-Tuscarora Consolidated Gold Mines Company, a corporation, as the owner of the property, for the two mining companies named in the original claim of lien. At the same time the court ordered notice to issue to the corporation directing it to appear in the action, as provided by law. Thereafter, Jay S. Milner, George E. Airis, and George H. Dern, as trustees for and on behalf of the stockholders and creditors of the company so substituted, filed their complaint in intervention. The case was tried upon the issues made upon the pleadings of respondent and interveners and upon an agreed statement of facts. The complaint furnishes no basis for the personal judgment rendered by the trial court against interveners. They are not made defendants in the complaint or mentioned therein. In fact, it is obvious that the only causes of action intended are as alleged against the said defendants. The failure of the complaint in this respect cannot be disputed, but it is earnestly insisted that the complaint in intervention sufficiently aids respondent's complaint so that the pleadings support the personal judgment against interveners. This contention goes beyond the question of the sufficiency of the complaint in this regard, to which the rehearing was limited on this phase of the case. However, there is no merit in the claim. Nowhere in the latter complaint is there an

allegation importing personal liability to interveners.

It is insisted that the allegations in the complaint in intervention concerning the lease between Hagg and interveners supplies a basis for such liability. We do not think so. These allegations are set out in our original opinion. It will be seen by a reference thereto, page 605, of 60 P. (2d), that no contractual relation between respondent and interveners with reference to the labor and materials appears therein. That such a relation is essential to establish a personal liability against the owner of the property in addition to a judgment foreclosing a lien is elementary. Harbridge v. Six Points Lumber Co., 17 Ariz. 339, 152 P. 860; 18 R. C. L. 992; State v. Breen, 41 Nev. 516, 522, 173 P. 555, 556. It is also a statutory requirement. Section 3749 N. C. L. As to this, the statute reads:

"* * * and each party whose claim is not satisfied in the manner hereinbefore provided for [by lien claim and enforcement], shall have personal judgment for the residue against the party legally liable for the same; *provided,* such person has been personally summoned or has appeared in the action. * * *"

In State v. Breen, this court said:

"By the greater weight of authority, we are of the opinion that a personal judgment may be rendered against a person personally liable in an action brought to enforce a mechanic's lien (18 R. C. L. 991), provided the complaint contains all the necessary facts constituting both grounds for relief and all the necessary allegations of an action in assumpsit."

Volker-Scowcroft Lumber Co. v. Vance, 36 Utah, 348, 103 P. 970, 971, 24 L. R. A. (N. S.) 321, Ann. Cas. 1912a, 124.

As pointed out, neither the complaint nor the complaint in intervention, by which the issues were framed, contain such necessary allegations. The granting to Hagg by interveners of the lease and option to purchase with the right to operate the property in consideration

of the payment of certain royalties upon any mineral extracted, as alleged, did not constitute Hagg interveners' agent to employ labor and purchase materials to carry on such operations. Consequently no contractual relation was thus established.

Respondent refers to section 3735 N. C. L. which in part provides:

" * * * and every contractor, subcontractor, architect, builder, or other persons, having charge or control of any mining claim, or any part thereof, or of the construction, alteration, or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner, for the purposes of this chapter."

The statutory agency thus created is for the purpose of securing liens and not personal liabilities.

The case of Verdi Lumber Co. v. Bartlett, 40 Nev. 317, 161 P. 933, cited by respondent, holds nothing to the contrary. The question of personal liability was not involved in that case. Respondent asserts that the evidence discloses such an active duty imposed upon Hagg by the terms of the lease and option, in working the property, as to constitute him the actual agent of interveners. This contention also goes beyond the question to which the rehearing was limited, but, if the contention were conceded, it would be unavailing, because such an agency has no support in the pleadings.

■ On the original hearing interveners contended that neither the respondent's complaint, nor the record, supported a judgment for a penalty under section 2785 N. C. L. We held against them on both branches of the contention. We are satisfied with our opinion as to the first point, but are persuaded that we fell into error in giving effect to the evidence as to that part of the complaint. The evidence fails to show that interveners were the employers of respondent, the lien claimant. The penalty may be exacted by an employee only from an employer. Chapter 139, Stats. 1925, p. 226; 2785 N. C. L.; Eldorado-Rand Mining Co. v. Thompson (57

Nev.), 65 P. (2d) 878; Fenn v. Latour Creek R. Co., 29 Idaho, 521, 160 P. 941.

The following appears in the agreed statement of facts:

"That the said L. W. Hagg employed plaintiff to work on said mining premises described in plaintiff's complaint filed herein, and he was not employed by the said interveners or the said Dexter-Tuscarora Consolidated Gold Mines Company."

The said lease and option are made a part of the agreed statement of facts, and our considered judgment is that it does not show an agreement by which Hagg became the agent of the interveners.

The judgment is further modified to give no sum as a penalty, nor personal judgment against interveners.

The judgment as so modified, and order denying the motion for a new trial are hereby affirmed.